# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 16-1394V
Filed: June 8, 2018

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| DON LEWIS, | * | |
| | * | UNPUBLISHED |
| Petitioner, | * | |
| v. | * | Special Master Oler |
| | * | |
| SECRETARY OF HEALTH | * | Decision on Attorneys' Fees and Costs. |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | | |

*Alison H. Haskins,* Maglio Christopher and Toale, PA, Sarasota, FL, for Petitioner.
*Jennifer L. Reynaud,* U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On October 25, 2016, Don Lewis ("Petitioner"), filed a petition for compensation in the National Vaccine Injury Compensation Program ("the Program"),[2] alleging that he suffered from Guillain-Barré syndrome ("GBS") as a result of receiving an influenza ("flu") vaccination on September 29, 2013. Petition ("Pet.") at ¶¶ 1, 4-5, ECF No. 1. Petitioner eventually moved for a motion for a decision dismissing his petition on July 19, 2017, stating that an "investigation of the facts and science supporting his case" revealed that he would be "unable to prove that he is entitled to compensation in the Vaccine Program." ECF No. 26 at ¶ 2. The special master previously assigned to this case issued a Decision on July 19, 2017, dismissing the petition for insufficient proof. *See* Decision, ECF No. 27.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I intend to post this Decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information, that satisfies the criteria in 42 U.S.C. § 300aa-12(d)(4)(B). Further, consistent with the rule, a motion for redaction must include a proposed redacted decision. If, upon review, I agree that the identified material fits within the requirements of that provision, I will delete such material from public access.

[2] National Childhood Vaccine Injury Act of 1986 ("Vaccine Act" or "Vaccine Program"), Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.      Relevant Procedural History Regarding Attorneys' Fees and Costs

On October 19, 2017, Petitioner filed a motion for attorneys' fees and costs (AFC Motion), requesting $42,847.60 in attorneys' fees, and $7,686.41 in costs, for a total of $50,534.01.  Petitioner's ("Petr's") Application ("App.") dated October 19, 2017, ECF No. 34 at 1-2.[3]  In accordance with General Order #9, Petitioner filed a signed statement indicating that he did not incur any out-of-pocket expenses throughout the pendency of this case.  *See* Ex. 10, ECF No. 34.

This case was transferred to my docket on November 30, 2017.  ECF No. 35.  On that same date, Respondent filed a response to Petitioner's AFC motion.  *See* Respondent's Response, dated November 30, 2017, ECF No. 36.  Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs." *Id*. at 1.  Respondent adds, however, that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." *Id*. at 2.  Additionally, he "respectfully recommends that [I] exercise [my] discretion and determine a reasonable award for attorneys' fees and costs." *Id*. at 3.

Petitioner filed a reply to Respondent's response on December 5, 2017.  ECF No. 38.  Petitioner argues (1) that Respondent's position regarding Petitioner's AFC Motion is "overly burdensome on the Court and prejudices Petitioner" (*id*. at 2); (2) that "Petitioner has met his burden of establishing reasonable fees and costs" (*id*. at 3); and (3) that his "attorneys' fees should be paid and his case costs reimbursed" (*id*. at 4).  This matter is now ripe for a decision.

## II.      Applicable Law and Discussion

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1).  If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id*.; *see also Sebelius v. Cloer*, 569 U.S. 369, 373 (2013).  A petitioner need not prevail on entitlement to receive a fee award, however, as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. §15(e)(1).  Respondent does not argue that this case lacks good faith or a reasonable basis.  Upon my review of the record, and an examination of the overall circumstances of this case, I also agree that this case was filed in "good faith," and with a "reasonable basis."

---

[3] Petitioner filed his application for attorneys' fees and costs without proper pagination. *See generally* Petr's App.  Thus, for ease of reference, I will use the page numbers generated from the CM/ECF filing reflected at the top of the page.  Therefore, the page entitled "Motion For Payment of Petitioner's Attorneys' Fees and Reimbursement Of Case Costs Pursuant to 42 U.S.C. 300aa-15" will be cited as "Petr's App. at 1" with subsequent pages numbered accordingly.

### A.  Reasonable Hourly Rates and Time Expended

#### i.  Requested Hourly Rates

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008).  Under this approach, "[t]he initial estimate of a reasonable attorney's fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."  *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  That product is then adjusted upward or downward based on other specific findings.  *Id*.

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by Respondent, and without providing petitioners with notice and opportunity to respond.  *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009).  Special masters need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees.  *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11).  In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F.3d at 1349).  There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate.  *Id*.  This is known as the *Davis County* exception.  *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

Petitioner's counsel of record, Ms. Haskins, performed work on this case from her law firm's Sarasota, Florida office (*see* Petr's App. at 3), and the billing invoices filed in connection with the present fee request reveal the work she performed on the matter (*see generally* Ex. 8, ECF No. 34).  In a prior case, Special Master Corcoran found attorneys from Ms. Haskin's law firm ("the Maglio Firm") based in Sarasota, Florida, to be entitled to forum rates.  *See Dezern v. Sec'y of Health & Human Servs.*, No. 13-643V, 2016 WL 6678496 (Fed. Cl. Spec. Mstr. Oct. 14, 2016).  I find Special Master Corcoran's analysis to be well-reasoned and persuasive, and will follow his approach in this instant fees request; thus, forum rates apply in this case.

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience.  *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL

5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

Accordingly, I find the requested hourly forum rates for Ms. Haskins -- *i.e.*, $324.00 for work performed in 2016, and $348.00 for work performed in 2017 (*see* Ex. 8 at 12) -- to be reasonable.[5]  I also find the requested forum rate for Mr. Caldwell -- *i.e.*, $367.00 for work performed in 2017 (*id.*) -- to be reasonable, as that hourly rate has been previously awarded to Mr. Caldwell in a prior case.  *See, e.g.*, *Johnson v. Sec'y of Health & Human Servs.*, No. 10-578V, 2017 WL 1881005 (Fed. Cl. Apr. 14, 2017).[6]

Additionally, twelve paralegals from the Maglio Firm worked on this case (*see* Ex. 8 at 12); for those paralegals, Petitioner requests a variety of hourly rates ranging from $105.00 to $145.00 (*id.*).  I find those paralegal hourly rates to be reasonable.

### ii.    *Hours Reasonably Expended*

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation."  *Avera*, 515 F.3d at 1348.  Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for

---

[4] The fee schedules are posted on this Court's website.  *See Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, https://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf (last visited on June 5, 2018); *see also Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2017*, https://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf (last visited on June 5, 2018).

[5] Ms. Haskins has been admitted to the Florida Bar since 1998.  *See* Ex. 11 at 1.  Accordingly, the 2015-2016 Hourly Rate Fee Schedule sets forth an attorneys' fees range of $300-$375 per hour for an attorney of Ms. Haskins' experience (between 11-19 years of experience in practice in 2016).  *See Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, *supra* at n.4.  Similarly, the 2017 Hourly Rate Fee Schedule sets forth an attorneys' fees range of $307-$383 per hour for an attorney of Ms. Haskins' experience in 2017.  *See Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2017*, *supra* at n.4.  As the requested hourly rates for Ms. Haskins is well within the fee schedules outlined above, I find Ms. Haskins' request in this instant matter to be reasonable.

[6] In *Johnson*, after analyzing the requested hourly rate increase for Mr. Caldwell for work performed in 2017 versus his prior year rate for 2016, Special Master Sanders determined that Mr. Caldwell's rate increase was within the acceptable customary year-over-year growth rate for attorneys' fees found in *McCulloch*; accordingly, she granted Mr. Caldwell a 2017 hourly rate of $367.00.  *Johnson*, at *3.  I find Special Master Sanders' analysis to be well-reasoned and persuasive, and will follow her approach in this instant fees request.

intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

Additionally, "[w]hen case-related work is performed during travel, the time sheets should reflect the work performed and the hours spent performing it." *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *7 (Fed. Cl. Spec. Mstr. Apr. 28, 2015) (quoting *Gruber ex rel. Gruber* v. *Sec'y of Health & Human Servs.*, 91 Fed. Cl. 773, 788 (2010)). And "[a]bsent documentation of the work performed by an attorney while he or she was traveling, the attorney will not be compensated at his or her full hourly rate for travel time." *Id.* Instead, those travel hours will be compensated "at one-half the standard hourly rate." *Id.*

Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the special master's reduction of attorney and paralegal hours); *see also Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997).

### a. Hourly rate for Mr. Caldwell's travel time

In this case, Mr. Caldwell billed 11 hours for travel in which he did not provide any description of the case-specific work that he performed during his travel.[7] I will thus award that time to be compensated at one-half of Mr. Caldwell's normal hourly rate. *See O'Neill*, supra. This results in a reduction of Petitioner's attorneys' fees award of **$2,018.50**.[8]

### b. Reduction of billable hours

Based on my review of the billing records submitted with Petitioner's AFC Motion (*see generally* Ex. 8), I find that a number of the hours billed by the Maglio Firm were "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521. For example, there are billed tasks in which attorneys and/or paralegals performed administrative tasks such as: opening and setting up client files, filing documents, uploading documents to internal files, maintaining internal calendars, receiving and saving case-related documents, and reviewing and paying

---

[7] *See* Mr. Caldwell's billing entries on the following dates: 5/29/2017, Ex. 8 at 9 (billing 2.6 hours at his full 2017 hourly rate for travel time from his home to San Francisco for a client meeting); 5/29/2017, *id.* at 10 (billing 0.6 hours at his full 2017 hourly rate for driving from Palo Alto to San Francisco); 5/29/2017, *id.* at 10 (billing 1.10 hours at his full 2017 hourly rate for traveling by car from "SFO to Palo Alto for client visit"); 6/1/2017, *id.* at 10 (billing 6.70 hours at his full 2017 hourly rate for return travel from San Francisco to his home).

[8] 11 hours of travel time x $183.50 (reflecting one-half of Mr. Caldwell's 2017 hourly rate) = $2,018.50.

invoices.[9]  Moreover, I note that there are numerous billing entries from the Maglio Firm which constitute block billing, wherein attorneys and/or paralegals billed for multiple tasks in a single entry.  Some of the blocks contain time that is not compensable, along with time that is compensable.[10]  For such entries, it is impossible to determine the precise portion of the time billed that should be compensated.  I note that it is counsel's burden to document the fees

_____

[9] *See*, *e.g.*, Ex. 8 at 1, billing entry of 10/25/2016 ("Open client file and set up same"); *id.* at 1, billing entry of 10/25/2016 ("Electronically file Petition and send hard copy to HHS.  Update file notes"); *id.* at 3, billing entry of 1/27/2017 ("Upload damages documents to client file"); *id.* at 10, billing entry of 6/8/2017 ("Update attorney calendar with details for the telephone conference with Dr. Zamvil"); *id.* at 10, billing entry of 6/23/2017 ("Receive Respondent's Rule 4 Report and save to file. Forward to attorney and update file"); *id.* at 11, billing entry of 6/26/2017 ("Receive and process invoice from Dr. Zamvil. Add notes to file").

    The above-mentioned entries are merely examples and are not exhaustive; they provide a sampling of the non-compensable administrative tasks billed by the Maglio Firm.

[10] *See*, *e.g.*, Ex. 8 at 1, three separate entries of 10/25/2016 (reflecting a paralegal block billing for compensable tasks, with non-compensable tasks such as filing the Petition, updating internal files, and organizing client file and intake documents); *Id.* at 2, entry of 10/26/2016 (reflecting a paralegal block billing for a compensable task, with non-compensable tasks such as updating internal files and sending internal emails); *Id.* at 2, entry of 10/27/2016 (reflecting a paralegal block billing for a compensable task, with non-compensable tasks such as updating internal files and sending internal emails); *Id.* at 2, entry of 11/2/2016 (reflecting a paralegal block billing for a compensable task, with non-compensable tasks such as updating internal files and sending internal emails); *Id.* at 2, entry of 12/7/2016 (reflecting a paralegal block billing for compensable tasks, with a non-compensable task such as electronically filing a status report); *Id.* at 3, entry of 1/9/2017 (reflecting a paralegal block billing for a compensable task, with a non-compensable task such as electronically filing a status report); *Id.* at 3, entry of 1/10/2017 (reflecting a paralegal block billing for a compensable task, with non-compensable tasks such as updating internal files and sending internal emails); *Id.* at 5, entry of 2/10/2017 (reflecting a paralegal block billing for a compensable task, with non-compensable tasks such as updating internal files and sending internal emails); *Id.* at 6, two separate entries of 2/22/2017 (reflecting a paralegal block billing for a compensable task, with non-compensable tasks such as electronically filing exhibits); *Id.* at 8, entry of 4/12/2017 (reflecting a paralegal block billing for a compensable task, with non-compensable tasks such as electronically filing documents and updating internal files); *Id.* at 8, entry of 4/13/2017 (reflecting a paralegal block billing for a compensable task, with non-compensable tasks such as updating internal files and sending internal emails); *Id.* at 9, entry of 5/24/2017 (reflecting a paralegal block billing for a compensable task, with a non-compensable task of updating internal files); *Id.* at 9, entry of 5/29/2017 (reflecting an attorney block billing for a compensable task, with a non-compensable task such as updating internal files).

    The above-mentioned entries are merely examples and are not exhaustive; they provide a sampling of numerous instances in which the billing entries reflect time billed for compensable tasks with non-compensable tasks.

claimed. *See Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *8 (Fed. Cl. Mstr. July 29, 2009). *See also Broekelschen v. Sec'y of Health & Human Servs.*, 2008 U.S. Claims LEXIS 399, at **13-14 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (reducing petitioner's attorneys' fees and criticizing her for block billing). Indeed, the Vaccine Program's *Guidelines for Practice* state as follows: "[e]ach task should have its own line entry indicating the amount of time spent on that task. Lumping together several unrelated tasks in the same time entry frustrates the court's ability to assess the reasonableness of the request."[11]

Accordingly, for the reasons outlined above, I will reduce the total award of attorneys' fees, with the travel time modifications discussed above, by 10%. This results in a reduction of Petitioner's attorneys' fees award of **$4,082.91**.[12]

### iii.   Summary of Total Fees

As outlined above, Petitioner is awarded attorneys' fees in the amount of **$36,746.19**.[13]

### B.   Reasonable Costs

Similar to attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests $7,686.41 in attorneys' costs, the bulk of which represents costs incurred by his counsel in attempting to secure an expert opinion in this case. *See generally* Ex. 9. Additional requested costs consist of filing fees, travel costs incurred by counsel in meeting with Petitioner, and service and copying costs associated with prosecuting this claim. *Id.* After reviewing the costs invoices attached to Petitioner's AFC Motion, I find the requested litigation costs to be reasonable, and will award them in full.

---

[11] *Guidelines for Practice Under the National Vaccine Injury Compensation Program* ("*Guidelines for Practice*") at 68 (revised April 21, 2016) found at http://www.uscfc.uscourts.gov/sites/default/files/GUIDELINES-FOR-PRACTICE-4212016.pdf (last visited on June 5, 2018) (Section X, Chapter 3, Part B(1)(b)).

[12]
| Attorneys' fees requested | = | $42,847.60 |
|---|---|---|
| Reduction for travel time | = | ($2,018.50) |
| **Subtotal** | = | **$40,829.10** |
| | | |
| **Additional 10% reduction amount** | = | **$4,082.91** |

[13]
| Attorneys' fees requested | = | $42,847.60 |
|---|---|---|
| Reduction for travel time | = | ($2,018.50) |
| Subtotal | = | $40,829.10 |
| 10% reduction | = | ($4,082.91) |
| | | |
| **Total awarded attorneys' fees** | = | **$36,746.19** |

### III.    Total Award Summary

Accordingly, I award **$44,432.60**, representing $36,746.19 in attorneys' fees and $7,686.41 in costs, in the form of a check payable jointly to Petitioner and his counsel, Alison H. Haskins.[14]  The Clerk of the Court is directed to enter judgment in accordance with this Decision.[15]

**IT IS SO ORDERED.**

<u>/s/ Katherine E. Oler</u>
Katherine E. Oler
Special Master

---

[14] Pursuant to Petitioner's request (*see* AFC Motion at 2, ¶ 10), the check in this case shall be forwarded to the following business address:  Maglio Christopher & Toale, PA, 1605 Main Street, Suite 710, Sarasota, Florida 34236.

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.